PROB 12
(02/05-D/CO)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U. S. A. vs. SHANE LEE ALLEN                Docket Number: 10-cr-00210-REB-01

**Petition for Issuance of Warrant Due to Violations of Supervised Release**

    COMES NOW, Garret Pfalmer, probation officer of the court, presenting an official report upon the conduct and attitude of Shane Lee Allen who was placed on supervision by the Honorable Robert E. Blackburn sitting in the court at Denver, Colorado, on the 5th day of November, 2010, who fixed the period of supervision at five (5) years, and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:

1. The defendant shall participate in a program of testing and/or treatment for drug abuse, as approved by the probation officer, until such time as the defendant is released from the program by the probation officer.  The defendant shall abstain from the use of alcohol or other intoxicants during the course of treatment and shall pay the cost of treatment as directed by the probation officer.

2. The defendant shall participate in a program of mental health treatment, as approved by the probation officer, until such time as the defendant is released from the program by the probation officer.  The defendant shall pay the cost of treatment as directed by the probation officer.  The Court authorizes the probation officer to release to the treatment agency all psychological reports and/or the presentence report for continuity of treatment.

3. The defendant shall participate in an approved program of sex offender evaluation and treatment, which may include polygraph, plethysmograph and Abel examinations, as directed by the probation officer.  The defendant will be required to pay the cost of these evaluations and treatment.  The defendant shall comply with the rules and restrictions specified by the treatment agency.  The Court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment.

4. The defendant shall notify the probation officer of all computers and/or other Internet access devices to which the defendant has access.  The defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

5. The defendant shall allow the probation officer to install software/hardware designed to monitor computer activities on any computer the defendant is authorized to use.  The software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations.  A notice will be placed on the computer at the time fo installation to warn other of the existence of the monitoring software on the computer.  The defendant shall not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

PROB 12
(02/05-D/CO)

**On November 21, 2012, the defendant's conditions of supervised release were modified to include the following:**

6.  The defendant shall reside in an approved Residential Reentry Center (RRC) for a period of up to 180 days, to commence at the direction of the Probation Office, and the defendant shall observer the rules of that facility. The defendant may be discharged earlier by the Probation Office, if the defendant is determined to be in full compliance with the conditions of supervision.

7.  During the defendant's Residential Reentry Center(RRC) stay, he/she shall comply with the rules of the RRC Location Monitoring Program(LMP) which includes passive Global Positioning System(GPS) tracking. The defendant shall wear all necessary GPS tracking devices and comply with all other LMP rules/procedures specified by the RRC. The RRC reserves the right to request reimbursement from the defendant for the full cost of any electronic monitoring equipment that is lost or intentionally damaged.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:
See attached hereto and herein incorporated by reference.

PRAYING THAT THE COURT WILL ORDER the issuance of a warrant for violations of supervised release and that the petition and warrant be sealed until the defendant's arrest. Subsequent to the arrest of the defendant, that the court consider revocation of supervised release.

ORDER OF THE COURT

Considered and ordered this 29th day of April, 2013, and ordered filed under seal and made a part of the record in the above case.

**s/ Robert E. Blackburn**

Robert E. Blackburn
U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.

*s/ Garret Pfalmer*

Garret Pfalmer
Senior U.S. Probation Officer

Place: Denver, Colorado
Date:  April 29, 2013

PROB 12
(02/05-D/CO)

## ATTACHMENT

On November 27, 2012, the conditions of supervision were read and explained to the defendant. On that date, he acknowledged in writing that the conditions had been read to him, that he fully understood the conditions, and that he was provided a copy of them. The term of supervision commenced on November 25, 2012.

The defendant has committed the following violations of supervised release:

1. **FAILURE TO RESIDE IN/COMPLY WITH RULES OF RESIDENTIAL REENTRY CENTER (RRC):**

On or about November 25, 2012, December 24, 2012, January 15, 2013, January 24, 2013, February 11, 2013, February 19, 2013, February 20, 2013, March 7, 2013, and April 24, 2013, the defendant failed to observe the rules of the residential reentry center (RRC), which constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On November 21, 2012, the defendant's conditions of supervised release were modified to include Special Condition No. 6, for up to 180 days Residential Reentry Center (RRC) placement. This modification was obtained to prevent the defendant from being homeless upon his release from the custody of the Bureau of Prisons. This modification effected the defendant's placement at Independence House South Federal, 2765 South Federal Boulevard, Denver, Colorado, on November 25, 2012.

On or about November 25, 2012, RRC security staff observed the defendant to be in possession of a cellular telephone. The defendant had not been authorized to use a cellular telephone by his assigned RRC case manager, nor the supervising probation officer. This is in violation of BOP prohibition act #305 - possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.

On or about November 25, 2012, the defendant refused a direct and lawful order from RRC staff to turn in the cellular telephone he possessed. He stated to staff "You can write me up for this one I don't care. You will not get this one." This is in violation of BOP prohibition act #307 - refusing to obey an order of any staff member.

On or about December 24, 2012, RRC staff observed the defendant had failed to complete his assigned chore, washing dishes. The defendant was provided an additional hour to complete the chore. During the next house count, RRC staff observed that the chore still was not completed. This is in violation of BOP prohibition act # 309 - failure to complete assigned chore.

On or about January 15, 2013, RRC staff conducted a room search at which time an unauthorized cellular telephone and an unauthorized gaming console were found, both belonging to the defendant. This is in violation of BOP prohibition act #305 - possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.

PROB 12
(02/05-D/CO)

On or about January 15, 2013, RRC staff instructed the defendant to turn in his unauthorized cellular telephone. The defendant refused to do so. This is in violation of BOP prohibition act #307 - refusing to obey an order of any staff member.

On or about January 24, 2013, via GPS monitoring, it was observed that the defendant had been at Independent Records, 1517 Ogden Street, Denver, Colorado, which was not previously authorized by RRC staff. This is in violation of BOP prohibition act #309 - being out of location.

On or about February 11, 2013, RRC staff entered the defendant's room to complete a house count and observed him speaking on a cellular telephone via a blue tooth device. This is in violation of BOP prohibition act # 309 - having an unauthorized cellular telephone in the RRC facility.

On or about February 19, 2013, RRC staff discovered that the defendant had applied for and was approved to receive monthly food stamps. Residents of the RRC are not permitted to apply for food stamps as stated in the RRC rules and regulations. This is in violation of BOP Prohibition act #309 - applying for food stamps.

On or about February 20, 2013, the defendant failed to attend his weekly one to one session with his case manager. This is in violation of BOP prohibition act #309 - failing to attend his weekly one to one session.

On or about March 7, 2013, RRC staff, specifically his assigned case manager, observed the defendant driving his vehicle, a blue and white Ford Bronco, on Yale turning left onto Federal Boulevard. The defendant was not authorized to drive his vehicle. This is in violation of prohibition act #309 - driving an authorized car.

On or about April 24, 2013, RRC staff entered the defendant's room and found his assigned chore of emptying the trash had not been completed. This is in violation of BOP prohibition act #309 - failure to complete an assigned chore.

On or about April 26, 2013, the defendant was rejected from his residential reentry center placement for ongoing and continued RRC rule violations.

The basis for his rejection was the fact that since initiating placement at the RRC facility as a BOP inmate on May 30, 2012, and extending through his public law placement which initiated on November 23, 2013, through the present, he accumulated a significant number of incident reports. Further, he was terminated from his court ordered sex offender treatment services on April 24, 2013, for failing to comply with the treatment program rules and restrictions. Many of these treatment contract violations also implicated containment violations of Independence House South Federal rules and regulations. It was determined he had displayed a consistent pattern throughout his placement of not wanting to follow the rules and regulations of the RRC and sex offender specific treatment. He was found to be no longer acceptable for placement in the RRC program by RRC Program Director Joe Starman.

PROB 12
(02/05-D/CO)

2. **FAILURE TO PARTICIPATE IN SEX OFFENDER SPECIFIC TREATMENT AS DIRECTED BY THE PROBATION OFFICER:**

On April 24, 2013, the defendant was unsuccessfully terminated from the sex offender specific treatment program at Redirecting Sexual Aggression, Inc. (RSA), Lakewood, Colorado, the treatment program in which the probation officer had directed him to participate. The defendant was unsuccessfully terminated from the treatment program due to his failure to comply with the rules and restrictions of the treatment program. This constitutes a Grade C violation of supervised release.

This charge is based on the following information:

On or about December 4, 2012, the defendant was verbally instructed to attend and participate in a sex offender specific treatment evaluation at Redirecting Sexual Aggression, Inc. (RSA), Lakewood, Colorado, which was scheduled for December 5, 2012, at 3:00 p.m. The defendant was further instructed to attend and participate in any and all prescribed therapeutic and testing services. Said services consisted of individual therapy, group therapy, and a polygraph examination.

On April 24, 2013, the defendant was unsuccessfully discharged from the RSA program, based on his failure to make progress in the treatment program, failure to fully participate in the treatment program, and failure to follow the rules and restrictions of the program. The specific instances of the defendant's non-compliance are listed as follows:

During the course of treatment, on or about January 15, 2013, the defendant was found to be in the possession of an unauthorized cellular telephone at the residential reentry center. The defendant had not been previously authorized by the RSA program to possess a cellular telephone.

During the course of treatment, on or about January 24, 2013, the defendant was observed via GPS monitoring to have been at Independent Records, 1517 Ogden Street, Denver, Colorado. The defendant had not been previously authorized by the RSA program to addend this location in the community.

During the course of treatment, on or about February, 11, 2013, the defendant was found to be in possession of a cellular telephone and blue tooth device. The defendant had not been previously authorized by the RSA program to possess either a cellular telephone or blue tooth device.

During the course of treatment, on or about March 7, 2013, the defendant was observed to be driving his vehicle. The defendant had not been previously authorized by the RSA program to drive his vehicle.

During the course of treatment, on or about April 22, 2013, the defendant attended a maintenance polygraph examination, during which he reported the following violations of the rules and restrictions of the RSA program:

The defendant reported he had unauthorized and unreported verbal contact with the children of his girlfriend's friend, Heidi. He stated that in approximately early April 2013, he was picked up by his girlfriend who had Heidi and her two children (one adult female, the other 10 years old - also female) in the vehicle. He stated he sat in the front seat of the vehicle and returned a greeting with the minor female passenger. He noted that he was receiving the ride to attend treatment services at RSA, and

PROB 12
(02/05-D/CO)

that he rode in the vehicle for approximately twenty (20) minutes.

The defendant reported that he has had ongoing unauthorized and unreported contact with both of his past victims of sexual assault.  He stated he has had conversations with one in reference to his potential child and the possibility of having to pay child support.  He stated his conversations with the other victim related to general topics.

The defendant reported that he has engaged in unauthorized and unreported sexual behaviors with his girlfriend.  Specifically, he stated they engaged in sexual intercourse in his girlfriend's vehicle on a maximum of six (6) occasions since he began treatment at RSA.  He stated those situations occurred during his lunch break on Saturdays, noting that they would park in secluded areas during each incident.

The defendant reported that he has had unauthorized and unreported sexual conversations with his current girlfriend, his girlfriend's friend, Heidi, and one of his prior victims.  He noted that the conversations with Heidi and his prior victim were related to sexual flirting and innuendo.  He stated he has engaged in mutual masturbation on the telephone with his girlfriend and that this has occurred as frequently as three times in one month.

The defendant reported he has engaged in unauthorized and unreported sexual text messaging with both his girlfriend and his prior victim.  He denied any images being included during either text conversation.

The defendant reported he has accessed the Internet without authorization via his girlfriend's cellular telephone on an average of once per week.  He reported doing so for basic Internet access, to assist his father's business e-mail account, and to update his father's business website by adding pictures and/or updating information.

The defendant reported he has accessed and viewed X-rated materials on the above noted cellular telephone as frequently as daily since he began treatment at RSA.  He stated he viewed materials depicting adults engaging in consensual sex acts with other adults.  He reported he typically used those materials as stimulus for masturbation.  He stated the last time he viewed X-rated materials on his girlfriend's cellular telephone was approximately mid-February to mid-March 2013.  The defendant added that the aforementioned cellular telephone was not approved for him to use.  He stated he had possession of the cellular telephone until approximately mid-February to mid-March 2013.  He also reported he had possession of a Playstation 3 and Ipod, but the Ipod had no Internet connectivity.  He stated all of these Internet capable devices were confiscated in late to mid-January 2013.  Lastly, the defendant reported he had retained possession of an unauthorized cellular telephone to this date.

The defendant reported reading several pornographic stories on the Internet.  He stated those stories were posted on a website which produced fictional sexual experiences of others.

The defendant reported that he attended a Chinese restaurant without authorization as frequently as weekly.  He stated he had also gone to other unapproved fast food restaurants, gas stations, convenience stores, and an Army Surplus Store.

Each of the above-noted admissions represent separate and distinct violations of the rules and restrictions of the sex offense specific program. Based on the above-noted violations, the defendant was unsuccessfully terminated from the treatment program.

PROB 12
(02/05-D/CO)

### 3. FAILURE TO NOTIFY THE PROBATION OFFICER OF ALL COMPUTER AND/OR INTERNET ACCESS DEVICES TO WHICH THE DEFENDANT HAS ACCESS:

Since initiating sex offender treatment services in approximately December 2012 through approximately mid-February to mid-March 2013, the defendant had access to an Internet access device that had not been reported to the probation officer, which constitutes a Grade C violation of supervised release.

This charge is based on the following information:

Pursuant to Special Condition No. 4, "The defendant shall notify the probation officer of all computers and/or other Internet access devices to which the defendant has access."

On or about April 22, 2013, the defendant attended a maintenance polygraph examination, during which he reported he accessed the Internet via his girlfriend's cellular telephone on an average of once per week.  He reported doing so for basic Internet access, to assist his father's business e-mail account, and to update his father's business website by adding pictures and/or updating information.

The defendant further reported he accessed the Internet and viewed X-rated materials on the above noted cellular telephone as frequently as daily since he began treatment at RSA.  He stated the last time he viewed X-rated materials on his girlfriend's cellular telephone was approximately mid-February to mid-March 2013.  The defendant added that the aforementioned cellular telephone was not approved for him to use.

The defendant also reported he had possession of a Playstation 3 which had  Internet connectivity. He stated this Internet capable device was confiscated in late to mid-January 2013.

All of the aforementioned Internet capable devices that the defendant reported utilizing to access the Internet had not been reported to the probation officer.

Before taking the polygraph examination, the defendant advised the probation officer that he anticipated negative results stating, "You know I am a rule breaker."